**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

TIMIYAH B. GARDNER,

*Plaintiff,*

v.

TOWNSHIP OF SPRINGFIELD, FOSTER ZIEGLER, JAMES MARABLE, STATE OF NEW JERSEY, WILLIAM DANIEL, JAMES BRADY, AND JOHN & JANE DOES 1-50 AND XYZ CORPORATION 1-50

*Defendants.*

22-cv-6232(MEF)(CF)

**OPINION and ORDER**

**Table of Contents**

I. Background
A. Facts
B. Procedural History
II. The Detectives
A. Analysis
B. The Counterargument
1. The Typical Approach
2. The Typical Approach Was Followed Here
3. The Implications
III. The Township
IV. The State-Law Claims
V. Conclusion

* * *

A man assaulted a gas-station attendant, and detectives investigated. They learned that a woman had also been on the scene, and one of the detectives applied for a warrant to arrest her. The judge issued the warrant and the woman was arrested --- but the charges against her were soon dismissed.

The woman sued the detectives, mainly claiming that her arrest was unconstitutional.

The detectives have now moved for summary judgment.

Their motion is granted in part.

* * *

## **I. Background**

### **A. Facts**

During 2021, there was a violent attack at a New Jersey gas station. A man got out of a car, punched the attendant, then got back into the driver's seat and drove off.[1]

Two police detectives[2] investigated.[3] As part of doing so, they put hands on the station's surveillance video. See Ziegler Deposition at 21:23-22:6.

The video showed that there had been a second person in the car, in the front passenger-side seat. See Surveillance Video at 0:15:45-0:15:50.

---

[1] See Brief in Opposition to Defendant Township of Springfield, Foster Ziegler, and James Marable's Motion for Summary Judgment ("Plaintiff's Brief"), Exhibit C ("Surveillance Video") (ECF 78-5) at 0:14:16-0:16-20.

[2] James Marable and Foster Ziegler. The papers here differ on how the last name of the first defendant is spelled. This Opinion and Order tracks the spelling used in the complaint.

[3] See Second Amended Complaint and Jury Demand ("Complaint") (ECF 32) ¶ 19; Answer to Plaintiff's Second Amended Complaint, Separate Defenses, and Jury Demand on Behalf of Defendants Township of Springfield, Foster Ziegler, and James Mirable I/P/A James Marable ("Answer") (ECF 34) ¶ 19; Plaintiff's Brief, Exhibit E ("Ziegler Deposition") (ECF 78-7) at 18:23-19:10. Local Rule 56.1 filings are there to help separate out the facts that are in dispute from those that are not. See, e.g., Petinga v. Sears, Roebuck and Co., 2009 WL 1622807, at *1 n.1 (D.N.J. June 9, 2009). But the filings here do not do the job. So to pick out the undisputed facts, the Court is mostly forced to fall back on other sources --- that is why, for example, the complaint and answer are frequently cited here. See Fed. R. Civ. P. 56(c)(1)-(3) (allowing this). Deposition transcripts are relied on here, too --- just for plainly non-disputed facts. As to use here the surveillance video, see footnote 27.

The detectives identified the passenger, and asked her for the driver's phone number. See Complaint ¶ 21; Answer ¶ 21.

But the woman did not provide it, see Complaint ¶ 22; Answer ¶ 22, and the detectives thought to seek criminal charges against her.[4]

At this point, one of the detectives[5] reached out to a local prosecutor.[6]

The detective walked the prosecutor through what had happened at the gas station. See Ziegler Deposition at 24:18-25:25.

And the prosecutor laid out the charges that he (the prosecutor) thought were a good fit. See Ziegler Deposition at 36:21-37:3; Brady Deposition at 18:6-14.

* * *

After getting off the phone, the detective wrote up two documents.[7]

The first mainly listed the charges[8] the prosecutor had laid out. See Warrant Application at 1-6.

This document carried the "complaint" label.[9]

The second document set down information that the detectives had learned in their investigation.

---

4 See Plaintiff's Brief, Exhibit I ("Marable Deposition") (ECF 78-11) at 37:6-8; Ziegler Deposition at 27:9-13.

5 Foster Ziegler.

6 See Defendants' Statement of Material Facts in Support of Their Motion for Summary Judgment (ECF 66) ¶ 17; Plaintiff's Response to Defendants' Township of Springfield, Foster Ziegler, and James Mirable's Statement of Material Facts ("Plaintiff's Response") (ECF 78-1) ¶ 17; see also Ziegler Deposition at 24:8-14, 57:9-23; Brady Deposition (ECF 78-6) at 21:1-18.

7 See Ziegler Deposition at 36:21-37:3; Plaintiff's Brief, Exhibit D ("Brady Deposition") (ECF 78-7) at 18:6-14; see also Plaintiff's Brief, Exhibit B ("Warrant Application") (ECF 78-4) at 1-10.

8 Robbery, aggravated assault, theft, and conspiracy.

9 The document's full label is "complaint-warrant." But it only became a "warrant" when it was later signed by the judge.

This document had the label of "affidavit of probable cause." It provided a moment-by-moment description of the events at the gas station. See id. at 8.

Bundled together, the two documents made up an application for a warrant to arrest the woman, and one of the detectives put the materials before a local judge. See id. at 1-10; Ziegler Deposition at 45:12-23.

The judge issued the warrant. See Warrant Application at 1.

The detectives then went to the woman's house and told her about the warrant. See Complaint ¶ 23; Answer ¶ 23. She turned herself in the next day and was arrested. See Complaint ¶¶ 24-25; Answer ¶¶ 24-25.[10]

### B. Procedural History

In light of the above, the woman[11] filed this lawsuit, pressing claims under both federal and state law. See Complaint ¶¶ 46-101.

From here, she is called "the Plaintiff."

The lawsuit named various people and entities as defendants, including the two detectives. See id. ¶¶ 10-16.[12]

This Opinion and Order zooms in mainly on the detectives,[13] so they are called "the Defendants."

The Plaintiff's federal-law claims against the Defendants are (i) false arrest and (ii) false imprisonment --- each alleged to be in violation of the Fourth Amendment to the Constitution. See id. ¶¶ 46-50, 57-61, 90-101.[14]

* * *

---

10 Per the complaint, the woman was released after 36 hours in jail, and a court later dismissed the charges against her. See Complaint ¶¶ 38, 41.

11 Recall: Timiyah Gardner.

12 The Plaintiff also sued, among others, the township the detectives worked for. See id. ¶¶ 10, 15. More later on the township. See Part III.

13 Recall: James Marable and Foster Ziegler.

14 There may possibly be another federal law claim against the Defendants. For that, see footnote 52.

The Defendants have moved for summary judgment, arguing that the Plaintiff's claims fail on the merits --- and that even if not, they (the Defendants) are entitled to summary judgment because of qualified immunity. See Defendant Township of Springfield, Foster Ziegler, James Mirable i/p/a/ James Marables' Motion for Summary Judgment ("Defendants' Brief") (ECF 66) at 6-12.

The Defendants' motion is now before the Court.

Take up the core issues here in Part II,[15] and then some loose ends in Part III and Part IV.

## II. The Detectives

When a government official, as here,[16] seeks judgment based on (i) the merits and (ii) qualified immunity, a court can choose which ground, if any, to grant judgment on. See Pearson v. Callahan, 555 U.S. 223, 227 (2009).

The court can hold that no right was violated by the official, a merits determination. See id. Or it can hold that no clearly established right was violated, a qualified-immunity determination. See id.

Here, the Court focuses on the first question, the merits one.

* * *

As noted, the Plaintiff has sued the Defendants for false arrest and false imprisonment, and the Defendants arrested the Plaintiff after getting a warrant from a judge.

In this circumstance, the law's focus is not on the information the police had --- and whether it added up to probable cause.[17]

Rather, the focus is on the information the police gave to the judge --- and whether it was accurate and complete.

---

[15] Note that in cases like this one, the merits standards and the qualified immunity standards blend into each other. See footnote 21.

[16] See Defendants' Brief at 6-12.

[17] As it would be in a warrantless arrest case. See, e.g., Pinkney v. Meadville, 95 F.4th 743, 748 (3d Cir. 2024) ("Normally, to evaluate probable cause, we would ask whether a reasonable officer would have found a fair probability that [the arrestee committed a crime]."); Franks v. Temple Univ., 514 F. App'x 117, 121 (3d Cir. 2013); Blaylock v. City of Phila., 504 F.3d 405, 411 (3d Cir. 2007).

As the Third Circuit has put it, "[w]hen a judge issues an arrest warrant," there is generally no false-arrest[18] liability for the police officer that executes the warrant "[u]nless the officer misrepresented material information to get the warrant." Pinkney v. Meadville, 95 F.4th 743, 748 (3d Cir. 2024) (emphasis added).[19]

Did the police officer applying for the warrant give the judge an accurate affidavit? If yes, any error in finding probable cause will be on the judge, not the applicant.[20]

Or did the applicant mislead the judge and in doing so show a "reckless disregard for the truth"? Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). In that case, "the protection afforded by the [judge's] review is lost." Dempsey v. Bucknell Univ., 834 F.3d 457, 469 (3d Cir. 2016).[21]

* * *

---

18 Or false imprisonment.

19 For more along these lines from the Third Circuit, see Andrews v. Scuilli, 853 F.3d 690, 697 (3d Cir. 2017) ("[B]ecause Sciulli arrested Andrews on a valid warrant, the District Court properly focused its probable cause analysis on whether Sciulli knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant.") (cleaned up); and Geness v. Cox, 902 F.3d 344, 356-57 (3d Cir. 2018) (stating that when a "neutral magistrate" finds probable cause "in connection with a warrant application, a plaintiff must establish" material misrepresentation to "satisfy his burden to establish a genuine dispute of material fact concerning the absence of probable cause"). Other courts take a similar line. See, e.g., Washington v. Napolitano, 29 F.4th 93, 105 (2d Cir. 2022).

20 See Egervary v. Young, 366 F.3d 238, 250-51 (3d Cir. 2004) ("We conclude that where . . . the judicial officer is provided with the appropriate facts to adjudicate the proceeding but fails to properly apply the governing law and procedures, such error must be held to be a superseding cause, breaking the chain of causation for purposes of § 1983 . . . liability.").

21 And, as to qualified immunity, the police officer violates a clearly established right. See Pinkney, 95 F.3d at 750 ("[N]o reasonable officer would have covered up a lack of probable cause by recklessly disregarding the truth in an affidavit.").

A police officer applying for an arrest warrant can mislead a judge in roughly two sorts of ways.

Affirmatively. By making a false statement. Describing, say, a "confident eyewitness identification" --- from a witness who was in fact wavering here and there, unsure of whether he had picked out the right person. Pinkney, 95 F.4th at 746 (emphasis added).

Or passively. By skipping over facts that should have been in the warrant application.[22] Leaving out, for example, that the robbery suspect whose arrest is being sought is actually six inches shorter than the robber that eyewitnesses say they saw. See Wilson v. Russo, 212 F.3d 781, 787-88 (3d Cir. 2000).[23]

* * *

Did anything like that happen here? No, the Court concludes.

The underlying facts were not distorted by the Defendants, affirmatively or passively. The judge was given an accurate and full affidavit. So the Plaintiff's federal detention-without-probable cause claims[24] cannot run against the Defendants and they are entitled to summary judgment on those claims.[25]

---

[22] See generally Dempsey, 834 F.3d at 469 (describing the obligation to tell a judge about things that "any reasonable person would know that a judge would want to know") (cleaned up).

[23] If a police officer's warrant application is misleading, there are next steps. These include rewriting the affidavit "word-by-word," --- crossing out any false statements, and plugging the holes left behind by any omissions with accurate information. See Dempsey, 834 F.3d at 470 (cleaned up). And then asking whether the fixed-up affidavit would have supported a probable-cause finding. See Pinkney, 95 F.4th at 749. But here, none of that needs doing. Because the Court concludes that the Defendants' affidavit was not misleading. See Part II.A.

[24] False arrest and false imprisonment. Each of these has an element of lack of probable cause. See Berry v. Kabacinski, 704 F. App'x. 71, 73 (3rd Cir. 2017).

[25] A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A factual dispute is material if it might affect the outcome of the suit under the governing law."

Work through the basis for this conclusion in Part II.A.

And as to why the Plaintiff's main counterargument is not persuasive --- that is covered in Part II.B.

### A. Analysis

To get going with the analysis, compare two things.

What happened at the gas station. And how that was described in the "affidavit of probable cause," the second part of the warrant application that was given to the judge.

* * *

The undisputed facts from the gas station.

A man pulled his car into the station. See Plaintiff's Brief, Exhibit F ("Gardner Deposition") (ECF 78-8) at 26:17-21.

He was in the driver's seat, and the Plaintiff was sitting next to him in the front passenger's seat. See id. at 28:12-13; 29:10-12.[26]

A gas-station attendant walked up to the car, talked to the people in it for a moment, and began pumping the gas. See Surveillance Video at 0:14:27-0:14:50.[27]

---

Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up). In assessing a summary judgment motion, "a district court may not make credibility determinations or engage in any weighing of the evidence." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004). Rather, the Court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Canada, 49 F.4th at 345 (cleaned up).

[26] See footnote 3, as to the citations for the undisputed facts here coming from sources outside of the Rule 56.1 submissions.

[27] The gas-station assault was recorded, without audio. The Court has reviewed the footage. Both sides attach the video to their filings. See Surveillance Video; Certification of Counsel ¶ 5 (ECF 66-1). And rely on it. See Defendants' SOMF ¶ 7; Plaintiff's Response ¶ 7; see also Plaintiff's Brief at 1 ("The record now before the Court --- including . . . the surveillance video --- shows a lack of probable cause.").

About five seconds later, the attendant circled back around to the driver's side, and spoke to the driver. See id. at 0:14:56-0:15:14.

The men talked for around fifteen seconds, and then the attendant began to walk away. See id. at 0:14:56-0:15:17.

But the driver pushed open his door and got out of the car. See id. at 0:15:18-0:15:28. He then attacked the attendant --- repeatedly punching him, and knocking him to the ground three times. See id. at 0:15:28-0:16:01. The attendant was left on the concrete, not moving. See id. at 0:16:01-0:20:05.

The beating took less than a minute. See id. at 0:15:28-0:16:01.

The Plaintiff remained in the car the whole time. See id. With one small exception, though --- over the course of about a second, she opened her car door, took one foot out, quickly pulled it back in, and then closed the door. See id. at 0:15:49-51.

* * *

The above is what the video footage shows. Now put it up against what was in the affidavit that went to the judge.

In doing so, note that the affidavit refers to the gas station attendant by his initials. "C.D." And that the affidavit calls the man who assaulted C.D. by his name --- "Xiomar J. Carroll," or just "Carroll." As to the Plaintiff here, she is called by her last name: "Gardner."

The affidavit:

> On 11/24/21 @ 1615 Hrs. Springfield Police was detailed to 5 Meisel Ave (BP Gas station) on a report of an assault. Upon officers arrival they found the victim "C.D." laying on the concrete ground unconcious. Medical aid was rendered and an investigation was started. (3) witness's were secured and later provided a video taped statement. All three statements corroborated the victim "C.D.", an employee of the BP Gas Station approached a 2007 Black BMW with NJ Reg. (G43MYX) and spoke to the occupants. "C.D." then proceeds to put gas into the vehicle. "C.D." the approaches the driver side of said vehicle where the altercation takes place. The driver, identified as Xiomar J. Carroll, the registered owner exists the vehicle and strikes "C.D." in the head multiple times with a closed fist. "C.D." falls to the ground and quickly regains his footing again, where Carroll forcibly throws him to the ground where "C.D." strikes his head on the pavement

> causing him to become unconcious. Caroll pulls the gas pump from his vehicle, throwing it to the ground and re-enters the vehicle and proceeds to exist the parking lot heading east on Morris Ave. "C.D." was transported to University Hospital in Newark, NJ as a trauma patient. Video surveillance collected shows a female passenger partially exit the vehicle before the vehicle flee's the parking lot. When detectives spoke to Gardner in an attempt to obtain Carroll's cell phone, she self admitted she was at the BP Gas Station with Carroll to get gas, Video surveillance collected and secured as evidence, which shows the witness to be reliable.

Warrant Application at 8.[28]

Was the above-quoted affidavit misleading?

No, the Court concludes. The next sections explain.

* * *

An affidavit can mislead by affirmatively misdescribing what happened.

But there is nothing like that here. Lay the surveillance video and the block quote next to each other and it is clear --- what the video shows, the affidavit faithfully and fully puts into words.

The video footage begins with a car pulling into the station. The attendant walks up to the car, speaks to the people in it, and then gets to pumping the gas. See Surveillance Video at 14:16-14:52

And that is there in the affidavit, captured accurately. "[A]n employee of the BP Gas Station approached a [car] and spoke to the occupants. [He] then proceeds to put gas into the vehicle." Warrant Application at 8.

Next up in the video is a short conversation between the driver and the attendant, followed by the driver punching the attendant and knocking him to the ground. See Surveillance Video at 15:02-15:33.

The affidavit tracks this. It describes the driver "striking [the attendant] in the head multiple times with a closed fist" until the attendant fell to the ground, and then "throw[ing]"

[28] The original affidavit was typed in capital letters, but here a normal typeface is used. Other than that, the original affidavit is reproduced as it was written.

the attendant to the ground, after he got back up. Warrant Application at 8.

As to the Plaintiff, the surveillance tape shows her pushing her foot out of the car for a moment, and pulling it back in. Nothing else.

The affidavit describes this as the Plaintiff "partially exit[ing]" the car. Warrant Application at 8. And that essentially gets it right.

In a nutshell: a look for affirmatively false statements in the affidavit turns up none.

* * *

Was the affidavit passively misleading? Did it leave things out that it should have included?[29]

Again, no.

The affidavit, for example, did not say that the Plaintiff was on the scene at the gas station --- but then failed to indicate that the Plaintiff was in the car virtually the whole time.

Glossing over a fact like that could potentially have left behind a misimpression. It could have suggested that on the dial that runs from merely being present to directly participating --- the Plaintiff was a turn or two closer to direct participation.

But the affidavit left nothing like this out.

It noted who did the hitting --- Carroll, it said, with no reference to the Plaintiff. And it noted who got out of the car. Carroll, yes. But not the Plaintiff. She "partially exit[ed]" the car --- a phrase that emphasized that the Plaintiff never got all the way out, to join in the attack or for any other reason. See Warrant Application at 8.

* * *

In sum, there was no affirmative false statement in the affidavit, and nothing material was left out either.[30]

---

29 The affidavit does not note one of the times that the video shows the driver knocking the attendant to the ground. See Surveillance Video at 0:15:46. But that is irrelevant here.

30 Two things here. First, the Plaintiff does not contend that the Defendants' motive is relevant. She does not, for example, argue that the affidavit was misleading because it omitted that

Therefore, it seems that the Plaintiff cannot show that the Defendants violated her Fourth Amendment rights to be free from false arrest or false imprisonment.[31]

But before definitively settling on this conclusion, take up the Plaintiff's main counterargument. That is the work of the next section.

### B. The Counterargument

To see the Plaintiff's counterargument, see Plaintiff's Brief at 9-10, come back to the warrant application.

But this time, hone in on the first part of the application (the complaint), not the second (the affidavit of probable cause, discussed throughout Part II.A).

Per the complaint:

> By certification or on oath, the [detective] says that to the best of his/her knowledge, information and belief the

---

the Defendants applied to arrest her in part because she did not provide certain information. (Maybe because a motive of this sort is generally irrelevant in false arrest/false imprisonment cases. See Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004).) Second, the Plaintiff does not suggest that any information went over to the judge other than what was in the warrant application. No suggestion, for example, that the judge asked a follow-up question on the application and that one of the Defendants came back verbally, with an inaccurate response.

[31] See, e.g., Pinkney, 95 F.4th at 747-48 ("[The defendant] violated [the plaintiff's] rights if he lacked probable cause to arrest him. Normally, to evaluate probable cause, we would ask whether a reasonable officer would have found a fair probability that there had been an assault and that [the plaintiff] had committed it. But when, as here, a judge issues an arrest warrant, we defer to it unless the officer misrepresented material information to get the warrant.") (citation omitted); Geness, 902 F.3d at 356-57; Andrews, 853 F.3d at 697; Dempsey, 834 F.3d at 469; see also Egervary, 366 F.3d at 248, 250. Egervary was a Fifth Amendment case, not a Fourth Amendment one. See id. at 243. But the causation principles that determine the outcome are the same, whether the source of the right is the Fourth Amendment or the Fifth. More later on this, in footnote 47.

> [Plaintiff] on or about 11/24/2021 in Springfield [Township], Union County, NJ did:
>
> Within the jurisdiction of this Court, did commit robbery by purposely attempting to inflict serious bodily injury while committing upon victim "C.D.", a BP gas station employee, specifically by punching the victim and body slamming the victim on the ground twice, causing the victim to strike his head. This is in violation of NJS 2C:15-1A(1)[.]
>
> PC: police investigation, video surveillance and statements by witness's as per Union County Assistant Prosecutor Brady.
>
> Within the jurisdiction of this Court, did commit aggravated assault by punching the victim "C.D." in the face and body slamming the victim "C.D.", a BP gas station employee on the concrete causing the victim to strike his head. This is in violation of NJS 2C:12-1B(1), a second degree offense.

Warrant Application at 1.[32]

The Plaintiff's counterargument is that the just-quoted paragraphs contain misstatements. See Brief in Opposition at 10.

For example, the Plaintiff is said to have "punch[ed]" and "body slamm[ed]" the gas-station attendant.

But that is not what happened. Per the video, it was the man who had been in the driver's seat (Carroll) who did the punching and the slamming. See Part I.A and Part II.A. Not the Plaintiff.

* * *

The Plaintiff's counterargument is not persuasive.

Police officers can be liable for false factual assertions made in a warrant application. But not for assertedly erroneous legal theories that they present to a judge --- and that the judge then herself decides to adopt and to use as a basis for her issuance of an arrest warrant.

Legal theories are what the assertions in the complaint plainly were.

Not factual statements that the Plaintiff herself punched or slammed the gas-station attendant. But a legal theory presented to the judge --- that the Plaintiff (presumably because she was

---

32 This document was in capital letters in the original.

alleged to be Carroll's co-conspirator) was responsible for his (Carroll's) punching and slamming of the gas-station attendant.

### 1. The Typical Approach

To get a sense of all this, take a step back --- and look to how things generally work in New Jersey when it comes to state-court arrest warrant applications, like the one here.

In a New Jersey warrant application, the affidavit of probable cause is[33] what an affidavit always is.

A sworn factual statement. See Affidavit, Black's Law Dictionary (12th ed. 2024) ("A voluntary declaration of facts written down and sworn to by a declarant[.]").[34]

And in a New Jersey warrant application, the complaint is[35] what a complaint often is.

An accusation. A charge. An indication as to the specific part of the criminal law that the defendant is said to have violated (by doing what she is said to have done in the affidavit of probable cause). See Complaint, Black's Law Dictionary (12th Ed. 2024) ("A formal charge accusing a person of an offense").[36]

---

33 Generally.

34 See also Affidavit, Ballentine's Law Dictionary (3d ed. 1969) ("Any voluntary ex parte statement reduced to writing, and sworn to or affirmed before some person legally authorized to administer an oath or affirmation"); Affidavit, Legal Information Institute ("[A] sworn statement . . . asserting that certain facts are true[.]") (https://www.law.cornell.edu/wex/affidavit); Affidavit, JUSTIA Legal Dictionary ("A written document where the signer . . . verifies that the information given is true") (https://dictionary.justia.com/affidavit); State v. Battista, 2017 WL 2991959, at *3 (N.J. App. Div. July 14, 2017) ("[T]he information contained in the affidavit provided probable cause for the issuance of the arrest warrant."); Martinez v. Cnty. of Burlington, 2014 WL 8580958, at *6 (N.J. App. Div. Apr. 15, 2015) ("The facts surrounding the probable cause to arrest plaintiff were fully detailed in the affidavit of probable cause.").

35 Generally.

36 See also Complaint, Ballentine's Law Dictionary (3d ed. 1969) ("The formal charge, made under oath, of the commission of a crime or offense"); Complaint, JUSTIA Legal Dictionary ("A

To pull it together:

In a New Jersey state-court warrant application, it is the affidavit of probable cause that generally lays out the facts. And it is for the complaint to lay out the applicant's legal theory --- the violation of the criminal law that, the applicant believes, flows from the facts put down in the affidavit.[37]

---

legally sworn document by a victim or police authority highlighting an alleged criminal violation.") (https://dictionary.justia.com/complaint); see also N.J. Ct. R. 3:2-1(a)(1) ("The complaint shall be a written statement of the essential facts constituting the offense charged[.]"); Robert Ramsey, New Jersey Practice Series, Municipal Court Practice Manual § 9:3 (Oct. 2026 ed.) (describing the complaint as what "charges either a crime or a [petty offense]"); cf. 24 Moore's Federal Practice § 603.02[1] ("A complaint is a sworn, written accusation charging the commission of a crime.").

[37] The emphasis here is on New Jersey state-court practice because this case is about a warrant application put before a New Jersey state-court judge. This said, New Jersey federal-court practice often uses the same division of labor sketched out in the text --- between the applicant's legal theory presented in one part of his warrant application, and the relevant underlying facts presented in another. In the District of New Jersey, the usual practice (though not the universal one) is for a law-enforcement agent to submit one document --- a "criminal complaint," with two attachments. "Attachment A" lays out the charge. And "Attachment B" details the underlying facts. So in a felon-in-possession case, for example, Attachment A would be the place to say that the suspect, a felon, "knowingly and intentionally possessed" a gun, in "violation of Title 18, U.S.C. § 922(g)(1)." And Attachment B would then narrate how the law-enforcement agent who is swearing out the complaint has come to believe that the suspect did, in fact, have a gun. See, e.g., Complaint, United States v. White (No. 26-mj-13012) (ECF 1). This is closely similar to the typical practice in New Jersey state courts. Just substitute "complaint" for "Attachment A" and "affidavit of probable cause" for "Attachment B." (Rule 4 of the Federal Rules of Criminal Procedure envisions that in some districts things will work as they often do in New Jersey --- with a complaint that bears the accusation, and a separate affidavit that lays out the factual back-up for the complaint's accusation. See Fed. R. Crim. P. 4(a) ("If the complaint or one or more affidavits filed with the complaint establish probable cause . . . the judge must issue an arrest warrant to an officer authorized to execute it."). But

* * *

This is a widely-shared background understanding. See, e.g., State v. Ingram, 230 N.J. 190, 195-96 (2017) ("The State charged defendant in a complaint-warrant with four offenses . . . . The affidavit of probable cause in support of the complaint contained the following facts[.]").

Indeed, when New Jersey courts are working to determine whether a warrant application fully and faithfully captured the facts,[38] it is the affidavit they look to.[39] See State v. Pinson, 461 N.J. Super. 536, 549-50 (N.J. App. Div. 2019); see also State v. Thompson, 2018 WL 495319, at *4-6 (N.J. App. Div. 2018); State v. Battista, 2017 WL 2991959, at *2-3 (N.J. App. Div. July 14, 2017).[40]

And note: the Court has not found a single New Jersey case that hones in on the "facts" as set out in the complaint despite an affidavit of probable cause coming in the same warrant application.

### 2. The Typical Approach Was Followed Here

Come back now to this case.

As is to be expected based on the ordinary division of labor in this area, the affidavit here is purely factual --- focused on

---

Rule 4 also leaves room for other practices --- for the possibility that "complaint" will work in an overarching and undifferentiated way, covering both the legal accusation and its factual back-up. See id.; see also Fed. R. Crim. P. 4(a) advisory committee's notes to 1966 amendment ("The amendment permits the complainant to state the facts constituting probable cause in a separate affidavit in lieu of spelling them out in the complaint.").)

38 Just like a federal court might need to. See Part II.

39 Or any sworn oral testimony.

40 New Jersey state-court rules (like Rule 4 of the federal rules, see footnote 37) are flexible. They allow for the possibility of a complaint that includes both the legal accusations and their underlying facts. See N.J. Ct. R. 3:3-1(a)(1) ("[A]n arrest warrant may be issued on a complaint only if . . . a judicial officer finds that there is probable cause from the complaint or an accompanying affidavit or deposition."). And this is how things sometimes go. See Jecrois v. Sojak, 2017 WL 2380173, at *6 (D.N.J. June 1, 2017).

"what happened," on the relevant "historical . . . events." Thompson v. Keohane, 516 U.S. 99, 109-11 (1995) (discussing the difference between factual questions and legal ones).

Who, what, when, where. See, e.g., Warrant Application at 8 ("[O]n 11/24/21 @ 1615 Hrs. Springfield Police was detailed to 5 Meisel Ave (BP Gas station)[.]").

Close-to-the-ground detail on "what happened" at the gas station. See, e.g., Warrant Application at 8 ("[The attendant] falls to the ground and quickly regains his footing, where Carroll again pushes him to the ground.").

And in the Detectives' investigation. See, e.g., id. ("When detectives spoke to Gardner in an attempt to obtain Carroll's cell phone, she self admitted she was at the BP gas station with Carroll to get gas.").

Facts, in short, and the foundational basis for them --- what is virtually always expected of an affidavit.

And no statutory cites, apparently because none were thought necessary. The affidavit zeroes in on things people did. Not on the legal implications of those things. The warrant application describes the affidavit as a "[d]escription of the relevant facts and circumstances," Warrant Application at 8 --- and that gets it right.

* * *

Move now to the other part of the warrant application here, the complaint.

It, too, plays its expected part --- it is laser-focused on the law.

Packed with citations to New Jersey statutes. See Warrant Application at 1 ("This is in violation of NJS 2C:12-1B(1)"); see also id. (reading: "Original Charge: 1) 2C:15-1A(1); 20 2C:12-1B(1); 3) 2C:20-3A").

And also with bits of legalese. Terms of art like "serious bodily injury."[41] Warrant Application at 1. And a reference to a crime being a "second degree offense." Id.

Plus the complaint contains assurances that the state court has the legal power to hear the case. See id. at 1-2 (specifying as to each charge that the Plaintiff committed the crime "[w]ithin the jurisdiction of this Court").

---

41 See N.J. Rev. Stat. 2C:15-1(b).

And also assurances that there has been sign-off from a government lawyer[42] --- a key point if the complaint's main aim is to assert a legal theory.

* * *

Bottom line: the warrant application here splits up the work like most New Jersey warrant applications do --- the complaint is the legal section, and the affidavit is the place for the supporting facts.

Indeed, the warrant application here makes sense as a whole precisely because the applicant's legal theories (in the complaint) are distinct from the factual statements (in the affidavit).

As noted, the complaint says that the Plaintiff punched and slammed the gas-station attendant. See Warrant Application at 1.

But that is just pages before the affidavit, which "more fully describe[s] the facts." Id. at 8.

And the affidavit is crystal clear on this point. No room for misunderstanding. Per the affidavit, the punching and slamming were done by Carroll. And the affidavit was explicit: the Plaintiff did not even fully get out of the car. Indeed, the Plaintiff is not mentioned in the affidavit until just before it wraps up, after the assault has been fully described. See Part II.A.

If the complaint and the affidavit were each purporting to lay out the facts, then the complaint and the affidavit would be badly and directly contradictory.

One saying that the Plaintiff punched and slammed. One making it clear that the Plaintiff did not do any of that.

This sort of flat contradiction would be hard to understand.

It would concern the core, unambiguous fact (who hit who) at the center of a caught-on-tape one-minute-long incident. And it would mean that the first pages of the warrant application (the complaint) are entirely at odds with what comes just next in the application (the affidavit).

But the contradiction melts away if the complaint in this case is taken as complaints in New Jersey state court generally are.

---

42 "PC: . . . as per Union County Assistant Prosecutor Brady." See Warrant Application at 1-2.

As simply putting forward the warrant applicant's legal theory --- a legal theory presumably based on the idea that the Plaintiff (charged as Carroll's alleged co-conspirator[43]) was legally responsible for Carroll's punching and slamming under New Jersey conspiracy law.

Not because the Plaintiff had done the punching and slamming herself. She had not, the affidavit makes that unmissable.

But as if the Plaintiff had done the punching and slamming herself. Because that is how imputation of responsibility can work between co-conspirators under New Jersey law.[44]

* * *

In short, the everyday allocation of tasks was being observed here. The complaint put forward the warrant applicant's legal theory. And the affidavit of probable cause laid out the applicant's view of the facts, to support his legal theory.

On this understanding, the Plaintiff's counterargument cannot work. The next section explains.

### 3. The Implications

The Third Circuit has held that a police officer "may not fake facts to find probable cause." Pinkney, 95 F.4th at 746.

But so long as the facts he provides are accurate, a police officer is not responsible when he puts forward what may be an erroneous legal theory --- and a judge then accepts it herself, and issues an arrest warrant based on it.

The Third Circuit has repeatedly so held.[45]

---

43 See Warrant Application at 2.

44 See N.J. Rev. Stat. 2C:2-6(a)-(b)(4) (providing that one conspirator is "legally accountable for the conduct" of their coconspirator); see also State v. Bridges, 133 N.J. 447, 454-55 (1993) ("[T]he acts of one conspirator in furtherance of the conspiracy are deemed to be the acts of all of the co-conspirators under a mutual-agency theory."); State v. Koskovich, 168 N.J. 448, 490, 495 (2001) (upholding jury instruction that "a person is basically responsible for the actions of an accomplice in crime just as though he himself had performed those actions").

45 See Edwards v. Kelly, 136 F. App'x 468, 472 (3d Cir. 2005) (holding that, because a "determination [was] a legal one . . . it [was] properly left to the judicial officer scrutinizing the

And this is fatal to the Plaintiff's arguments.

Properly understood,[46] the detective-Defendant's statements in the complaint were assertions of a legal theory, not of what the facts are. Under Third Circuit precedent, the detective cannot be liable for the legal theories he proposed to the judge and that she then chose to accept.[47]

---

affidavit," and not the police officer); Egervary, 366 F.3d at 249 (holding that, because "the purported misrepresentation . . . [was] a legal one and not an inadequate or false representation of the factual basis upon which the legal ruling depended," the affiant was not liable for it); accord, e.g., Goad v. Town of Meeker, 654 F. App'x 916, 919, 919 n.4 (10th Cir. 2016) (disregarding an alleged false statement in an arrest warrant application because it referenced "not a fact at all, but a legal conclusion."); see also United States v. Langford, 314 F.3d 892, 894 (7th Cir. 2002) (explaining that a warrant's "legal sufficiency [is] a matter for the judicial officer to determine"); cf. Machie v. Manger, 2010 WL 2132223, at *4 (D. Md. May 25, 2010) (holding that an "incorrect assertion that [a plaintiff] was a co-conspirator . . . fall[s] short of a violation of the Fourth Amendment. Officers obviously do not violate Fourth Amendment rights every time they make an incorrect charge.").

[46] See Part II.B.1, Part II.B.2.

[47] Why has the Third Circuit drawn this line between facts and legal theories? Causation. As to the causal link that would otherwise connect (i) a police officer's assertion of a legal theory to (ii) a person's arrest based on that legal theory --- that link is said to be broken when, wedged in between (i) and (ii), a judge decides to herself accept the legal theory and to issue her arrest warrant based on it. See Egervary, 366 F.3d at 246-51; see also Edwards v. Kelly, 136 F. App'x 468, 471 n.3 (3d Cir. 2005); Johnson v. Provenzano, 646 F. App'x 279, 282 (3d Cir. 2016) ("As a general matter, the actions of a judicial officer sever the chain of causation between any police conduct and an improper arrest."). Note that there may also be other reasons to immunize a police officer for the legal theories he advances when a judge issues a warrant based on them. For example, providing such immunity tends to incentivize police officers to go to judges for arrest authorization in the first place, rather than relying on their own judgment and making a warrantless arrest. After all, in making a warrantless arrest, an officer is accountable for whether he made the right bottom-line call as to probable cause. See footnote 17. But not if he

* * *

Moreover, even putting aside the categorical divide between legal theories and statements of fact, the Plaintiff still has to show that the affiant-Defendant acted with "reckless disregard for the truth" when he gave the judge the warrant application. See Sherwood, 113 F.3d at 399.

That generally requires "affirmatively distort[ing] the truth" despite "obvious reasons" to pause is required. Andrews v. Scuilli, 853 F.3d 690, 698 (3d Cir. 2017) (cleaned up).

But how can it be said the detective-Defendant was doing any of that here?

He laid out a long, detailed, and accurate description of the facts --- where the facts belong, in the affidavit. The affidavit described what the Plaintiff did, and faithfully. See Part II.A.

And in the place where the legal theory generally goes, the complaint, the detective-Defendant included just that --- a legal theory, that apparently imputed liability to the Plaintiff based on her alleged co-conspirator's acts.

All of this could have added up to a "reckless disregard" for the truth of the facts only if the detective-Defendant somehow imagined that he was interacting with a judge who did not know the everyday rules of the road --- who did not know where in the warrant application she should look for the facts, and who therefore might look to the complaint instead of the affidavit.

And to act with "reckless disregard," the detective-Defendant also had to have imagined that he was before a judge who would stop her work after reading the complaint. Because if the judge were to read the complaint and the affidavit, each[48] as setting forth facts --- it is hard to understand how the detective might have thought that she would issue the arrest warrant. Instead, she would simply have been confused --- having been presented

---

chooses to go to a judge --- and thereby leaves it to her to decide whether the officer's proposed probable cause theory (contained in his warrant application) holds up. Angling these sorts of decisions into judges' hands is a long-standing goal of Fourth Amendment law. See, e.g., United States v. Leon, 468 U.S. 897, 913-14 (1984); but cf. Malley v. Briggs, 475 U.S. 335, 345 (1986) (stating that this consideration alone cannot do all of the work in this area).

[48] Against standard practice.

with two flatly contradictory versions of the same minute's-worth of videotaped events at the heart of a (short) warrant application.

There is no reason to indulge any of these assumptions. They have no basis in the evidentiary record put before the Court.

The detective-Defendant could not expect to mislead a judge here about the facts if the judge knew where the normal place to look for them was --- the affidavit.

And there is no basis for proceeding on the assumption that the detective-Defendant thought he was dealing with a judge who did not know her business (who thought facts were in the complaint, not the affidavit) and who would be pulling up short (wrapping up her review after reading just the complaint).

* * *

Even giving her the inferences she is entitled to here, the Plaintiff has failed to show that a reasonable jury could hold the detective-Defendants responsible for detaining her without probable cause.

The motion for summary judgment as to the Plaintiff's arrest-without-probable-cause claims[49] (Counts I, III, and V) must therefore be granted.

## III. The Township

The Plaintiff's remaining federal claims are against the township the Defendants worked for.

The Plaintiff primarily sues the township under Title 42, United States Code, Section 1983.

But a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

For the township's policy or custom, the Plaintiff points to its practice of having police get approval from a prosecutor before applying to a judge for an arrest warrant. See Brief in Opposition at 16-17.

That practice appears real. See Marable Deposition at 14:20-24.

---

[49] False arrest and false imprisonment. See footnote 24.

But "encouraging police to seek legal advice" before applying for a warrant is a "salutary" way to go. Kelly v. Borough of Carlisle, 622 F.3d 248, 255 (3d Cir. 2010).

It is not the sort of improper practice the Plaintiff must point to. Entirely proper practices cannot, as they must, cause a plaintiff's injury. See L.A. Cnty. v. Humphries, 562 U.S. 29, 30-31 (2010). Generally, they can only generate the exact opposite effect. Preventing constitutional injuries. Not causing them.[50]

The Court must therefore grant the township's motion for summary judgment as to Count X.

## IV. The State-Law Claims

The Plaintiff's remaining claims arise under state law.[51]

The Court's jurisdiction over these claims was pegged to its jurisdiction over the Plaintiff's federal-law claims. See Complaint ¶ 4; 28 U.S.C. § 1367.

But there are no more federal-law claims in play.[52]

---

[50] Cf. Brown v. City of Pittsburgh, 586 F.3d 263, 292-93 (3d Cir. 2009) (explaining that a plaintiff must show at least "a pattern" of "unconstitutional activity" under a policy for the policy to count under Monell); Doe ex rel. Doe v. School Dist. of City of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003).

[51] Abuse of process; intentional infliction of emotional distress; negligent infliction of emotional distress; negligent hiring, training, and supervision; and respondeat superior. See Complaint ¶¶ 62-65, 75-97.

[52] As to the Plaintiff's section 1985 conspiracy claim --- it has been waived. See Brief in Opposition at 15 n.1. The Plaintiff's complaint also includes a section 1983 malicious prosecution claim. See Complaint at ¶¶ 51-56, 66-74. But it seems unlikely that claim runs against the Defendants. Prosecutors --- the natural objects of a malicious prosecution claim --- were once defendants in this case. (It is also unlikely that the Plaintiff would prevail on a malicious prosecution claim against the officers because such a claim has lack-of-probable-cause as an element, see Montgomery v. De Simone, 159 F.3d 120, 125 (3d Cir. 2019), and the Defendants are not liable as to any lack of probable cause for the Plaintiff's arrest, as discussed in Part II.) If the Plaintiff was aiming to assert a section 1983 malicious prosecution claim against the detective-Defendants, she shall file a brief letter on or before

And "where the claim[s] over which the district court has original jurisdiction [are] dismissed before trial," as the Plaintiff's federal-law claims must be, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (quoting Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)).

No one here has come forward with an "affirmative justification" for the Court to decide the Plaintiff's state-law claims. So the Court "must decline to decide" them. Hedges, 204 F.3d at 123 (cleaned up).

As to the state-law claims (Counts IV, VI, VII, VIII, and IX), the Defendants' summary judgment motion is denied ---- the Court will not retain jurisdiction over those claims.

## V. Conclusion

Resolving ECF 66, the Defendants' motion is granted as to the Plaintiff's federal-law claims against the Defendants (Counts I, III, and V), subject to the small loose end at footnote 52; the Defendants' motion is granted as to the Plaintiff's federal-law claims against the township (Count X); and the Court declines to exercise jurisdiction over the Plaintiff's state-law claims (Counts IV, VI, VII, VIII, IX).[53]

IT IS on this 19th day of October, 2026, so **ORDERED**.

Michael E. Farbiarz, U.S.D.J.

October 28 at 9:00am so stating and a tight briefing schedule will be set.

[53] In light of the loose end at footnote 52, the Court will not direct the Clerk of Court to dismiss this case until after October 28.